Citation Nr: 1825331 
Decision Date: 04/30/18 Archive Date: 05/07/18

DOCKET NO. 14-18 280 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Nashville, Tennessee


THE ISSUE

Whether new and material evidence has been received to reopen service connection for post-traumatic stress disorder (PTSD), and if so, whether service connection is warranted.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran (Appellant)

ATTORNEY FOR THE BOARD

S. Moore, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from June 1972 to June 1974. The instant matter is a Veterans Benefit Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2012 rating decision from the RO in Nashville, Tennessee, which declined to reopen service connection for PTSD, finding that new and material evidence had not been received since a prior final decision. An April 2014 statement of the case subsequently reopened the claim and denied service connection for PTSD on the merits. 

In November 2016, the Veteran testified at a Travel Board hearing in Nashville, Tennessee, before the undersigned Veterans Law Judge. The hearing transcript has been associated with the record. Since issuance of the April 2014 statement of the case, additional evidence has been received by the Board. The Veteran explicitly waived RO consideration of new evidence at the November 2016 Travel Board hearing; therefore, the Board may consider this evidence in the first instance. 38 U.S.C. § 7105(e) (2012); 38 C.F.R. § 20.1304 (2017). 


FINDINGS OF FACT

1. An April 2009 rating decision denied service connection for PTSD on the grounds that the evidence did not show a current diagnosis of PTSD or a verified in-service stressor sufficient to cause PTSD. 

2. The Veteran did not timely file a notice of disagreement following the April 2009 rating decision, and new and material evidence was not received during the one year appeal period following that decision.

3. Evidence received since the April 2009 rating decision relates to an unestablished fact of a current diagnosis of PTSD and an in-service stressor.

4. The Veteran does not have a current disability of PTSD. 


CONCLUSIONS OF LAW

1. The April 2009 rating decision denying service connection for PTSD became final. 38 U.S.C. § 7105 (2012); 38 C.F.R. §§ 20.302, 20.1103 (2017).

2. Evidence received since the April 2009 rating decision is new and material to reopen service connection for PTSD. 38 U.S.C. § 5108 (2012), 38 C.F.R. § 3.156 (2017). 

3. The criteria for service connection for PTSD have not been met. 38 U.S.C. §§ 1110, 5103(a), 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 4.125 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2017). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b). Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 
19 Vet. App. 473 (2006). Notice should be provided to a claimant before the initial unfavorable AOJ decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

In addition, in Kent v. Nicholson, 20 Vet. App. 1 (2006), the United States Court of Appeals for Veterans Claims (Court) held that, in the context of an application for reopening, VCAA notice (1) must notify a claimant of the evidence and information that is necessary to reopen the claim and (2) must notify the claimant of the evidence and information that is necessary to establish entitlement to the underlying benefit sought by the claimant. Id. at 11-12. The Court elaborated that VA is required, in response to an application to reopen, to look at the bases for the denial in the prior decision and send a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial.

May 2012 and August 2012 VCAA notices informed the Veteran of the evidence generally needed to support a claim for service connection, what constitutes new and material evidence, why service connection for PTSD was denied, what new and material evidence would be necessary to reopen the claim, what actions the Veteran needed to undertake, and how VA would assist in developing the claim. The May 2012 and August 2012 VCAA notices were issued to the Veteran prior to the relevant rating decision on appeal. Additional VCAA notice regarding PTSD claims based on personal assault was issued in December 2013 prior to readjudication in the April 2014 statement of the case. Therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini, 18 Vet. App. at 112.

With regard to the duty to assist, VA has satisfied its duties to assist the Veteran. VA has made reasonable efforts to obtain relevant records of evidence. Specifically, VA has associated service treatment records, military personnel records, VA treatment records, relevant VA examination reports, the November 2016 Board hearing transcript, and the Veteran's lay statements with claim file.

During the November 2016 Travel Board hearing, the undersigned VLJ heard the Veteran's testimony as to the issue of service connection for PTSD. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues, and (2) the duty to suggest the submission of evidence that may have been overlooked. In this case, during the November 2016 Travel Board hearing, the undersigned VLJ identified the issue on appeal during the hearing and advised that new and material evidence was required to reopen PTSD. The representative stated that new evidence reflected a current diagnosis of PTSD; therefore, the undersigned VLJ suggested submitting a medical nexus opinion relating PTSD to military service; thus, the Board concludes that VA has satisfied its duty to notify the Veteran.

The Veteran was provided VA psychological examinations in March 2007, October 2014, August 2015, and February 2017. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examination reports, taken in light of the other lay and medical evidence of record, are thorough and adequate and provide a sound basis upon which to base a decision with regard to the issue on appeal. The VA examiners reviewed the claim file, personally interviewed and examined the Veteran, including eliciting a history, provided detailed findings, and offered an opinion with supporting rationale.

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in the appeal, and no further development is required to comply with the duty to assist in developing the facts pertinent to the appeal. In view of the foregoing, the Board will proceed with appellate review.

Reopening Service Connection for PTSD

Generally, a claim which has been denied may not thereafter be reopened and allowed based on the same record. 38 U.S.C. § 7105. However, pursuant to 
38 U.S.C. § 5108, if new and material evidence is presented or secured with respect to a claim which has been disallowed, the VA Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence is defined as existing evidence not previously submitted to agency decision makers. Material evidence is defined as existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). In determining whether evidence is "new and material," the credibility of the new evidence must be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 
24 Vet. App. 110, 117 (2010). Furthermore, in determining whether this low threshold is met, VA should not limit its consideration to whether the newly received evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA Secretary's duty to assist or through consideration of an alternative theory of entitlement. Id at 118.

Regardless of the RO's determination as to whether new and material evidence had been received, the Board must address the issue of the receipt of new and material evidence in the first instance because it determines the Board's jurisdiction to reach the underlying claims and to adjudicate the claims de novo. See Woehlaert v. Nicholson, 21 Vet. App. 456, 460-61 (2007) (citing Barnett v. Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996)). If the Board determines that the evidence submitted is both new and material, it must reopen the case and evaluate the claim in light of all the evidence. Justus, 3 Vet. App. at 512. Such evidence is presumed to be credible for the purpose of determining whether the case should be reopened. Once the case is reopened, the presumption as to the credibility no longer applies. Id at 513.

An April 2009 rating decision denied service connection for PTSD based on the grounds of no current diagnosis of PTSD and no verifiable in-service stressor. The Veteran did not file a timely NOD following the April 2009 rating decision, and no new and material evidence was received during the one year appeal period following the decision. As such, the April 2009 rating decision became final as to the evidence then of record, and is not subject to revision on the same factual basis. See 38 U.S.C. § 7105; 38 C.F.R. §§ 3.156(a), (b), 20.302, 20.1103.

Since the April 2009 rating decision denying service connection for PTSD, VA has received additional medical evidence. A June 2014 outpatient VA treatment record reflects a diagnosis of PTSD, though, as will be discussed below after reopening, is outweighed by other evidence of record. Additionally, on a May 2012 statement in support of the claim, the Veteran reported a history of an in-service stressor related to sustaining an injury to the eye while responding to an altercation as a military policeman. When the credibility of such evidence is presumed for the purposes of reopening the claim, such evidence relates to unestablished facts of current disability of PTSD and in-service stressor, so could reasonably substantiate the issue of service connection for a psychiatric disorder. For this reason, the Board finds that the additional evidence is new and material to reopen service connection for PTSD. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a).


Service Connection for PTSD

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection generally requires 
(1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Service connection for PTSD requires medical evidence establishing a diagnosis of the condition, credible supporting evidence that the claimed in-service stressor actually occurred, and a link, established by medical evidence, between the current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f) (2017). 

The evidence reflects current diagnoses of cocaine use disorder, alcohol use disorder, substance induced mood disorder, depressive disorder (can be substance induced), anxiety disorder, and unspecified personality disorder (cluster B traits). None of these is listed as a "chronic disease" under 38 C.F.R. § 3.309(a); therefore, the "chronic disease" presumptive provisions of 38 C.F.R. §§ 3.303(b), 3.307(a)(3), and 3.309(a) do not apply to the claim for service connection. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The Veteran essentially contends that the claimed PTSD is related to active service, specifically being stabbed in the eye with a bottle while responding to a bar fight as a military policeman when he was stationed in Ansbach, Germany. The Veteran contends that he began to have problems after separation from service, such as nightmares and hallucinations related to the claimed in-service stressor of injury to the eye during the bar fight. Additionally, the Veteran contends that depression is a part of the claimed PTSD. See November 2016 Board hearing transcript, May 2012 statement in support of the claim. 

After a review of all the lay and medical evidence of record, the Board finds that the weight of the evidence is against finding that the Veteran has a current diagnosis of PTSD consistent with either the DSM-IV or the DSM-5. Although January 2014 and June 2014 VA treatment record entries reflect a diagnosis of PTSD, the weight of the evidence is against a finding that the Veteran has a current diagnosis of PTSD for VA compensation purposes. See 38 C.F.R. § 3.304(f); see also 38 C.F.R. § 4.125(a) (2014) (stating that the diagnosis of PTSD must comply with the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, 4th edition, of the American Psychiatric Association (DSM-IV)); 38 C.F.R. § 4.125(a) (2017) (stating that the diagnosis of PTSD must comply with the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, 5th edition, of the American Psychiatric Association (DSM-5)). 

As noted above, the representative stated that a June 2014 outpatient VA treatment record reflected a diagnosis of PTSD. A review of the June 2014 VA treatment record does reflect a diagnosis of PTSD, noting that the Veteran self-reported symptoms suggestive of PTSD, such as hypervigilance, staying to oneself, feeling paranoid, and endorsed memories about his brother and war related traumas; however, a formal PTSD assessment was not performed, so a diagnosis of PTSD pursuant to DSM-IV or DSM-5 was not confirmed. 

Moreover, despite reporting war-related traumas during the June 2014 outpatient visit, the Veteran has otherwise denied a history of combat trauma during service. See January 2013, March 2014, August 2014, and October 2015 VA treatment records. The Veteran served for two years during the Vietnam era from 1972 to 1974 and the DD Form 214 reflects that the Veteran spent the majority of service 
(1 year, 6 months) in Germany. Additionally, as will be discussed below, the Veteran previously reported that he did not witness the death of his brother. As such the diagnosis reflected in the June 2014 VA treatment record is of no probative value because it is based on subjective histories of traumas grounded in inaccurate facts. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that an opinion based upon an inaccurate factual premise has no probative value); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions because examiner failed to consider certain relevant information). 

Similarly, a January 2014 VA treatment record reflects a diagnosis of PTSD, noting that the Veteran reported a history of PTSD due to things experienced in the military. Specifically, while seeking treatment for depression in the context of relapse on cocaine and alcohol, the Veteran provided histories of injury to the eye while responding to a bar fight in the military, the death of his mother while he was stationed in Germany, and trauma due to his brother's death; however, a formal PTSD assessment was not performed in support of the diagnosis reflected on the January 2014 VA treatment record. Moreover, the Veteran provided identical histories during outpatient VA medical center visits in September 2013, November 2013, and October 2014 that resulted in diagnoses of recurrent major depressive disorder, cocaine dependence, and alcohol dependence, and to rule out PTSD. A "rule out" diagnosis is a differential diagnosis that indicates a list of conditions that could explain a patient's symptoms, but is not an acceptable primary diagnosis. 

On other occasions, the Veteran has denied symptoms indicative of PTSD. A January 2013 VA treatment record reflects that the Veteran reported depressed mood on and off for several years and reported bad dreams about his mother dying while in the military, but denied seeing combat, nightmares, flashbacks, or other PTSD symptoms. During a September 2013 and October 2014 healthcare for homeless screening, the Veteran denied military related PTSD. See September 2013 and October 2014 VA treatment records. Additionally, a September 2016 VA treatment record reflects that the Veteran denied symptoms consistent with PTSD on initial interview. 

The record reflects that formal PTSD assessments have been negative for a diagnosis of PTSD. The Veteran underwent a formal PTSD screening in December 2011. At the time, the examining psychiatrist wrote that the Veteran endorsed re-experiencing, avoidance, and arousal symptoms regarding events that do not constitute DSM-IV criteria for traumatic events (events that involve actual or threatened death or serious injury to self or witnessing death or threat of injury to others). The Veteran attributed post-traumatic-like symptoms to his mother dying of cancer while he was stationed in Germany and his brother being killed several years ago, neither of which the Veteran witnessed. The Veteran also reported nightmares related to getting hit in the eye with a bottle while on duty as Military Police when he was stationed in Germany; however, the Veteran denied any other symptoms related to this event. The Veteran's primary complaints were recurring nightmares (related to various events/losses), difficulty initiating and maintaining sleep, periods of low mood (especially when thinking of various losses throughout his life), and feelings of guilt regarding past drug abuse and perceived relationship failures. The Veteran also reported a significant history of cocaine and substance abuse dating back to the early 1980s. Based on the information provided during the PTSD assessment, the examining psychiatrist diagnosed anxiety disorder NOS, depressive disorder NOS, and alcohol and cocaine dependence, but did not diagnose PTSD. See December 2011 VA treatment record. 

The Veteran underwent a second PTSD assessment in August 2014; however, the examining psychiatrist wrote that the Veteran provided inconsistent self-reports, was uncooperative in describing his current symptoms, and he left the room and refused to complete the PTSD assessment; therefore, the psychiatrist was unable to evaluate PTSD and no diagnosis was rendered. In January 2018, the Veteran again reported a history of post-traumatic-like symptoms related to the claimed stressor of sustaining an injury to the eye while on duty as Military Police. The Veteran also reported occasional nightmares about this event, but denied other PTSD symptoms related to this event. As such the treating psychiatrist assessed that the Veteran did not meet the criteria for PTSD per DSM-5 and did not have severe symptoms of PTSD. The Veteran was diagnosed with cocaine, alcohol, and marijuana use disorders; substance induced mood disorder; and unspecified personality dos (cluster B traits). See January 2018 VA treatment record. Additionally, despite providing similar histories of stressors related to an in-service eye injury and the death of the Veteran's mother while stationed in Germany, the VA examiners did not assess sufficient evidence to support a diagnosis of PTSD. The VA examiners diagnosed alcohol and cocaine abuse, depressive disorder (can be substance induced mood disorder), and unspecified anxiety disorder, and insomnia secondary to tinnitus. See March 2007, October 2014, August 2015, and February 2017 VA examination reports. 

As discussed above, despite an outlying diagnosis of PTSD in January 2014 and June 2014, these diagnoses are inconsistent with and outweighed by other medical and lay evidence of record, including evidence that the PTSD diagnosis was based on inaccurate facts and were not diagnosed pursuant to a formal PTSD assessment; the Veteran lay statements while seeking treatment denying symptoms related to PTSD; and the lack of diagnosis of PTSD during formal PTSD assessments and the VA psychological examinations. 

As to the Veteran's contention that depression is a part of the claimed PTSD, the Veteran has already filed a claim for service connection for depression, which was denied initially in a January 2015 rating decision and again upon readjudication in a December 2015 statement of the case. The Veteran did not timely file a substantive appeal to the Board (VA Form 9) following the December 2015 statement of the case, and new and material evidence was not received during the one year appeal period following the statement of the case; therefore, the denial of service connection for depression is final and a broadening of the claim on appeal pursuant to Clemons v. Shinseki, 23 Vet. App. 1 (2009) is not warranted. 

Additionally, the evidence shows that the currently diagnosed depressive disorder has been attributed to the (non-service-related) cocaine and alcohol use disorders. See February 2017 VA examination report, January 2018 VA treatment record (diagnosing substance induced mood disorder and depressive disorder (can be substance induced mood disorder)); see also April 2006, March 2014, January 2017, and January 2018 VA treatment records (reflecting assessment of depression and suicidal ideation in the context of substance abuse and the Veteran's lay statement that increased depression was related to cocaine and alcohol dependence and denying mania, hypomania, psychosis, and suicidal ideation when sober). Direct service connection for disability resulting from a claimant's own drug or alcohol abuse is precluded for all VA benefit claims filed after October 31, 1990 (including in this case with the service connection claim received in December 2014). See 38 C.F.R. § 3.301(a), (c)(2)(3); see also Allen v. Principi, 237 F.3d 1368, 1376 (Fed. Cir. 2001); VAOPGCPREC 2-98; VAOPGCPREC 7-99.

For the reasons discussed above, the Board finds that the weight of the evidence demonstrates that the Veteran does not have a current diagnosis of PTSD in accordance with the DSM-IV or DSM-5 criteria as required under 38 C.F.R. 

§ 4.125(a). As such, service connection for PTSD, is not warranted. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claim must be denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.


ORDER

New and material evidence having been received, the appeal to reopen service connection for PTSD is granted.

Service connection for PTSD is denied





______________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs